# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

SAMSON COSTIGAN,

    Defendant.

Case No. 3:23-cr-00069-TMB-KFR

**REPORT AND RECOMMENDATION TO DENY MOTION TO DISMISS**

Before the Court is a Motion to Dismiss (hereinafter "Motion") filed by Defendant Samson Costigan, requesting dismissal of the Indictment on Second Amendment grounds.[1] The government opposes the Motion.[2] Oral argument was not requested and would not assist the Court. Because the Court is bound by Ninth Circuit precedent holding that the statute under which Defendant has been charged is constitutional, the Court recommends that the Motion be **DENIED.**

## I. BACKGROUND

On August 17, 2023, Defendant was indicted by grand jury on one count of Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[3] The Indictment alleges that on or about June 5, 2023, Defendant was in possession of three firearms and two types of ammunition, despite knowing that he "had been convicted of a crime punishable by imprisonment for a term exceeding one year."[4] The Indictment further alleges that Defendant has a prior felony conviction, specifically a 2022 state conviction for manslaughter.[5]

---

[1] Doc. 24.
[2] Doc. 25.
[3] Doc. 2.
[4] *Id.* at 1–2; *see also* 18 U.S.C. § 922(g)(1).
[5] Doc. 2 at 2.

On December 4, 2023, Defendant filed the Motion, arguing that the count alleged against him should be dismissed pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen*.[6] Defendant maintains that pre-*Bruen* Ninth Circuit precedent, which consistently upheld the validity of § 922(g)(1), is "no longer good law" and therefore no longer controls the issue of § 922(g)(1)'s constitutionality.[7] Defendant then turns to *Bruen*'s "history-and-text" standard for determining whether a gun regulation comports with the Second Amendment and argues that: (1) he and his alleged conduct are protected by Second Amendment; and (2) there is no American historical tradition prohibiting convicted felons from possessing firearms.[8] As a result, Defendant argues, § 922(g)(1) unconstitutionally burdens his Second Amendment right to keep arms.[9]

The government opposes the Motion, arguing that *Bruen* did not overturn Ninth Circuit precedent upholding § 922(g)(1).[10] Even if it did, the government contends, application of the *Bruen* standard shows that § 922(g)(1) does not violate the Second Amendment.[11] The government therefore urges the Court to decline to dismiss the Indictment.[12]

//

---

[6] 597 U.S. 1 (2022).
[7] Doc. 24 at 9.
[8] *Id.* at 11–33.
[9] The Court notes that Defendant asserts both a facial and an as-applied challenge to § 922(g)(1). There appears to be little difference between these challenges, as Defendant's sole argument is that § 922(g)(1) is unconstitutional in relation to his possession of firearms while being a felon. Defendant does not discuss his particular circumstances beyond acknowledging the Indictment's allegation that a manslaughter conviction was the felony that subjected him to § 922(g)(1)'s firearms possession ban. Doc. 24 at 1–2. In other words, Defendant does not argue that any other specific facts in this case, such as those underlying his prior felony conviction, render § 922(g)(1) unconstitutional as to him. The Court therefore construes Defendant's as-applied challenge, to the extent he is truly mounting one, as differing from his facial challenge only with respect to the fact of his manslaughter conviction. This difference has no bearing on the Court's analysis or recommended disposition.
[10] Doc. 25 at 6–7.
[11] *Id.* at 8–19.
[12] *Id.* at 21.

R&R re Motion to Dismiss
*United States v. Costigan*
3:23-cr-00069-TMB-KFR
2
Case 3:23-cr-00069-TMB-KFR   Document 29   Filed 01/11/24   Page 2 of 10

## II. LEGAL STANDARD

A party may bring a pretrial motion to raise "any defense, objection, or request . . . that the court can determine without a trial on the merits."[13] Pursuant to this rule, a defendant may move to dismiss a "defective" indictment.[14] Dismissal is proper when an indictment is "sought under a statute that is unconstitutional on its face or as applied."[15]

## III. DISCUSSION

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[16] The first U.S. Supreme Court case to undertake an "in-depth examination of the Second Amendment" was *District of Columbia v. Heller*.[17] In *Heller*, the Supreme Court concluded that a District of Columbia regulation banning handgun possession in the home violated the Second Amendment, explaining that the right to keep and bear arms is an individual right held by the people without regard to any militia service.[18] In so holding, the Supreme Court clarified that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."[19] The Supreme Court further emphasized that these prohibitions were "presumptively lawful."[20] Two years later, in *McDonald v. City of Chicago*, the Supreme Court "repeat[ed] [its] assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons."[21]

The Ninth Circuit has relied on *Heller* and *McDonald* in answering the same

---

[13] Fed. R. Crim. P. 12(b)(1).
[14] *See United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007).
[15] *Id.*
[16] U.S. Const. amend. II.
[17] 554 U.S. 570, 635 (2008).
[18] *Id.*
[19] *Id.* at 626.
[20] *Id.* at 626 n.26.
[21] 561 U.S. 742, 786 (2010).

question Defendant presents here. In *United States v. Vongxay*, the Ninth Circuit held that § 922(g)(1) "does not violate the Second Amendment as it applies to [the defendant], a convicted felon."[22] The court observed that *Heller* categorized longstanding prohibitions on the possession of firearms by felons as "presumptively lawful regulatory measures," and declared that "[n]othing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1).[23] Moreover, the court squarely rejected the defendant's argument that *Heller*'s language about firearm-possession bans for convicted felons was non-binding dicta, explaining that this language was "integral" to *Heller* in limiting that decision's scope.[24] In several subsequent decisions, the Ninth Circuit continued to affirm the validity of § 922(g)(1) on similar grounds.[25]

Defendant argues that *Vongxay* is no longer controlling law for two reasons: (1) *Vongxay*'s reading of *Heller* is "incompatible with *Bruen*, which has repudiated any reliance on *Heller*'s list of 'presumptively lawful' exceptions to uphold felon disarmament statutes;" and (2) *Vongxay* "relied on a line of cases upholding felon disarmament laws under means-end scrutiny," an analytical approach that *Bruen* rebuked.[26] The Court disagrees and instead joins the large number of district courts within the Ninth Circuit, including in the District of Alaska, in determining that *Bruen* did not overturn *Vongxay*'s holding that § 922(g)(1) does not violate the Second Amendment.[27]

---

[22] 594 F.3d 1111, 1118 (9th Cir. 2010).
[23] *Id.* at 1115 (quoting *Heller*, 554 U.S. at 626 n.26).
[24] *Id.*
[25] *Van Der Hule v. Holder*, 759 F.3d 1043, 1051 (9th Cir. 2014) ("We addressed whether § 922(g)(1) violates the Second Amendment in [*Vongxay*] and determined that it did not. . . . We see no reason to change our view now."); *United States v. Phillips*, 827 F.3d 1171, 1175 (9th Cir. 2016) (stating that the court was required to "assum[e] the propriety of felon firearm bans . . . under Supreme Court precedent and [its] own"); *United States v. Torres*, 789 Fed. App'x 655, 657 (9th Cir. 2020) (noting that the court was still "bound under *Vongxay* and *Heller* to assume propriety of felon firearm bans").
[26] Doc. 24 at 8–9.
[27] *See, e.g.*, *United States v. Delpriore*, 634 F. Supp. 3d 654 (D. Alaska 2022); *United States v.*

To show that Ninth Circuit precedent has been "effectively overruled," a party must demonstrate that "the reasoning or theory of [the] prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority."[28] "The clearly irreconcilable requirement is a high standard. . . . [I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent."[29] Rather, if a court "can apply . . . prior circuit precedent without running afoul of the intervening authority it must do so."[30]

Defendant has not shown that *Vongxay*'s recognition of § 922(g)(1)'s constitutionality is clearly irreconcilable with *Bruen*. "*Bruen* created a new standard to evaluate whether modern firearms regulations comport with the Second Amendment, [but] . . . did not question the constitutionality of regulations disarming felons."[31] To the contrary, the majority opinion in *Bruen* "recognized the continuing validity" of these "longstanding" laws and emphasized that its holding was "in keeping with *Heller*."[32] Several of the separate opinions similarly recognized *Bruen*'s consistency with *Heller* and *McDonald*. In a concurrence, Justice

---

*Roberts*, No. 3:23-cr-00057-TMB-KFR-1, 2024 WL 50889 (D. Alaska Jan. 4, 2024); *United States v. Filoialii*, No. 3:21-cr-00053-JMK, 2023 WL 5832153 (D. Alaska Sept. 8, 2023); *United States v. Owens*, No. 3:23-cr-00026-SLG-KFR, 2023 WL 5291341 (D. Alaska Aug. 17, 2023); *United States v. Jackson*, 656 F. Supp. 3d 1239 (W.D. Wash. 2023); *United States v. Serrano*, 651 F. Supp. 3d 1192 (S.D. Cal. 2023); *United States v. Hunt*, — F. Supp. 3d —, 2023 WL 6439410 (D. Or. 2023); *United States v. Gamble*, — F. Supp. 3d —, 2023 WL 6460665 (D. Nev. 2023); *United States v. Hill*, 629 F. Supp. 3d 1027 (C.D. Cal. 2022); *United States v. Butts*, 637 F. Supp. 3d 1134 (D. Mont. 2022); *United States v. Yates*, No. 23-cr-0031-AMO-1, 2024 WL 69072 (N.D. Cal. Jan. 5, 2024); *United States v. Page*, No. CR 23-06-H-BMM, 2023 WL 8702081 (D. Mont. Dec. 15, 2023); *United States v. Estrada*, No. 1:22-cr-00256-BLW, 2023 WL 4181325 (D. Idaho June 26, 2023); *United States v. Guthery*, No. 2:22-cr-00173-KJM, 2023 WL 2696824 (E.D. Cal. Mar. 29, 2023); *United States v. Chatman*, Nos. 22-cr-00453-CRB-1 & 14-cr-00552-CRB-1, 2023 WL 3509699 (N.D. Cal. May 16, 2023).

[28] *Miller v. Gammie*, 335 F.3d 889, 890, 893 (9th Cir. 2003) (en banc).

[29] *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quoting *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017)).

[30] *Id.*

[31] *United States v. Endsley*, No. 3:21-cr-00058-TMB-MMS-1, 2023 WL 6476389, at *3 (D. Alaska Oct. 5, 2023).

[32] *Roberts*, 2024 WL 50889 at *5 (quoting *Bruen*, 597 U.S. at 17).

Kavanaugh—joined by Chief Justice Roberts—approvingly quoted *McDonald* to reiterate that the Supreme Court's Second Amendment jurisprudence should not be interpreted to "cast doubt on [the] longstanding prohibitions on the possession of firearms by felons."[33] Justice Breyer—joined by Justices Kagan and Sotomayor in dissent—agreed with Justice Kavanaugh in "understand[ing] [*Bruen*] . . . to cast no doubt on [this] aspect of *Heller*'s holding."[34] Justice Alito likewise indicated in his concurrence that *Bruen* had not "disturbed anything that [the Supreme Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."[35] Considerable evidence thus supports the notion that *Bruen* preserved *Heller* and *McDonald*'s endorsements of the validity of felon disarmament laws. Accordingly, the Court disagrees with Defendant that *Vongxay*'s reliance on these statements renders that case incompatible with *Bruen*.

Furthermore, to the extent that *Vongxay* does not follow the precise analysis articulated in *Bruen*, this inconsistency does not demonstrate that the two cases are clearly irreconcilable. In setting forth a new standard for evaluating Second Amendment challenges, *Bruen* rejected the widely accepted two-step framework the Courts of Appeals had previously used. At the first step, the government had an opportunity to establish the challenged law regulates activity falling outside the scope of the right as originally understood.[36] Courts then ascertained the original scope of the right based on its historical meaning.[37] If the government could prove the regulated conduct fell beyond the Second Amendment's original scope, the analysis stopped there because the regulated activity was "categorically unprotected."[38] But if the historical evidence was inconclusive or "suggest[ed] the

---

[33] *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring).
[34] *Id.* at 129 (Breyer, J., dissenting).
[35] *Id.* at 72 (Alito, J., concurring).
[36] *Id.* at 18 (citing *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)).
[37] *Id.* (citing *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017)).
[38] *Id.* (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)) (internal quotation marks omitted).

R&R re Motion to Dismiss
*United States v. Costigan*
3:23-cr-00069-TMB-KFR
6
Case 3:23-cr-00069-TMB-KFR   Document 29   Filed 01/11/24   Page 6 of 10

1 regulated activity was not categorically unprotected," the analysis proceeded to step two.[39] At the second step, courts analyzed "how close the law c[ame] to the core of the Second Amendment right and the severity of the law's burden on that right."[40] If a "core" Second Amendment right was burdened, courts applied strict scrutiny to determine whether the law was "narrowly tailored to achieve a compelling governmental interest."[41] Otherwise, courts applied intermediate scrutiny and considered whether the regulation was "substantially related to the achievement of an important governmental interest."[42]

Bruen rejected the second half of this approach, which it deemed "one step too many" because *Heller* and *McDonald* did not support applying means-end scrutiny in a Second Amendment context.[43] The Supreme Court set forth a new standard, under which a court must first determine whether "the Second Amendment's plain text covers an individual's conduct."[44] If it does not, then the regulation is valid and the analysis ends there. But if the Second Amendment's text covers the conduct at issue, then the conduct is "presumptively protect[ed]," and the court must then determine whether the government has met its burden to "justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation."[45] "Only if a firearm regulation is consistent with this Nation's historical traditional may a court conclude that the individual's conduct falls outside the Second Amendment's [protection]."[46]

*Vongxay* did not apply the means-end scrutiny that *Bruen* now forbids. Rather, in addition to relying on *Heller*, the Ninth Circuit examined the Second

---

[39] *Id.* (quoting *Kanter*, 919 F.3d at 441) (internal quotation marks omitted).
[40] *Id.* (quoting *Kanter*, 919 F.3d at 441) (internal quotation marks omitted).
[41] *Id.* at 18–19 (quoting *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017)) (internal quotation marks omitted).
[42] *Id.* at 19 (quoting *Kachalsky v. County of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012)).
[43] *Id.*
[44] *Id.* at 24.
[45] *Id.*
[46] *Id.*

Amendment's text and historical understanding. The Ninth Circuit observed that "denying felons the right to bear arms is consistent with the explicit purpose of the Second Amendment" and noted that it had identified analogous "historical gun restrictions" that supported § 922(g)(1)'s constitutionality.[47] Although *Vongxay* did not fully engage in the core historical analysis that *Bruen* now requires and acknowledged that "the historical question ha[d] not been definitively resolved,"[48] "that limited tension between *Vongxay* and *Bruen* is not enough to find that *Bruen* effectively overruled *Vongxay*."[49]

In sum, the Court remains bound by *Vongxay* because it is possible to apply that case's reasoning consistently with *Bruen*. Though Defendant requests the Court to examine the history of felon-in-possession laws, the Court declines to do so because it would not change the Court's position that *Vongxay* commands a ruling that § 922(g)(1) is constitutional.

//

---

[47] *Vongxay*, 594 F.3d at 1116–17; *see also id.* at 1118 ("[M]ost scholars of the Second Amendment agree that the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citizen[ry]' that would protect society through 'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'" (quoting Don. B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 LAW & CONTEMP. PROBS. 143, 146 (1986))).
[48] *Id.* at 1118.
[49] *United States v. Jackson*, 656 F. Supp. 3d 1239, 1243 (W.D. Wash. 2023) (internal quotation marks omitted); *see also supra* note 27 (listing examples of district courts within the Ninth Circuit that have addressed § 922(g)(1) and determined that *Bruen* did not overrule *Vongxay*); *see also Vincent v. Garland*, 80 F.4th 1197, 1199–1202 (10th Cir. 2023) (determining that *Bruen* did not abrogate circuit precedent that relied on *Heller*'s language about "longstanding" felon-in-possession restrictions to uphold § 922(g)(1), explaining that *Bruen* "did not indisputably and pellucidly abrogate" that precedent); *United States v. Jackson*, 69 F.3th 495, 502, 505 n.3 (8th Cir. 2023) (concluding that § 922(g)(1) is constitutional based on historical tradition of legislatures "employ[ing] status-based restrictions to disqualify categories of persons from possessing firearms," and opining that in *Heller*, the Supreme Court "presumed that . . . regulations [forbidding the possession of firearms by felons] are constitutional because they are constitutional," though the Supreme Court "termed the conclusion presumptive because the specific regulations were not at issue in *Heller*"); *United States v. Jones*, 88 F.4th 571, 574 (5th Cir. 2023) (rejecting argument that district court committed plain error by determining § 922(g)(1) is constitutional and compiling intra-circuit cases holding the same).

## IV. CONCLUSION

The Court concludes that § 922(g)(1) remains constitutional in the wake of *Bruen*. Therefore, the Court recommends that Defendant's Motion to Dismiss at Docket 24 be **DENIED**.

DATED this 11th day of January, 2024 at Anchorage, Alaska.

*s/ Kyle F. Reardon*
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

**NOTICE OF RIGHT TO OBJECT**

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[50] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[51]

A party may file written objections to the magistrate judge's findings and recommendations within fourteen (14) days.[52] A response to the objections may be filed within seven (7) days after any objection is filed.[53] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal

//
//

---

[50] 28 U.S.C. § 636(b)(1)(B).
[51] *Id.* § 636(b)(1)(C).
[52] *Id.*; L.M.J.R. 7(a)(1).
[53] L.M.J. R. 7(a)(2).

authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[54]

---

[54] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).