IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

*United States of America v. Samson Costigan*
Case No. 3:23-cr-00069-TMB-KFR

By:  THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS:  ORDER FROM CHAMBERS

The matter comes before the Court on the United States' (the "Government") Motion to Revoke Order of Release of Defendant Samson Costigan ("Costigan") Under 18 U.S.C. § 3145 (the "Motion").[1] Costigan opposes the Motion.[2] Upon *de novo* review,[3] for the reasons discussed below, the Court **GRANTS** the Motion. Accordingly, the Order of Release is **REVOKED**.

   *A. Background*

In August 2023, a grand jury indicted Costigan on one count of Felon in Possession of Firearms and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[4] An arrest warrant was issued and Costigan was ordered detained on August 24, 2023.[5] The Magistrate Judge found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of others and the community, and by a preponderance that no condition or combination of conditions would reasonably assure Costigan's appearance, due in part to Costigan's prior criminal history, his participation in criminal activity while on probation, parole, or supervision, and his prior violations of probation, parole, or supervised release.[6]

On April 30, 2024, on the recommendation of the Magistrate Judge, this Court accepted Costigan's guilty plea to the crime charged.[7] Costigan admitted the following factual basis:

> On or about June 5, 2023, Samson Costigan knowingly possessed a Ruger AR-556 rifle, a .22 caliber Ruger Wrangler revolver, a 12-gauge IMI Tavor TS12 shotgun, as well as .22 caliber and 5.56 caliber ammunition in his home in Anchorage, Alaska. The firearms and ammunition were manufactured outside the State of Alaska and had previously moved in and affected interstate commerce. At the time of possession, Mr. Costigan knew that he had been previously convicted of

---

[1] Dkt. 68 (Motion to Revoke).
[2] Dkt. 76 (Opposition to Motion to Revoke).
[3] *See* 18 U.S.C. § 3145(c); *United States v. Koenig*, 912 F. 2d 1190, 1191–93 (9th Cir. 1990) (holding that district courts must engage in *de novo* review of magistrate orders granting or denying pretrial release).
[4] Dkt. 2 (Indictment)
[5] Dkt. 10 (Order of Detention).
[6] *Id.* at 2–3.
[7] Dkt. 52 (Text Order Adopting Final Report & Recommendation on Guilty Plea); Dkt. 50 (Report and Recommendation on Plea of Guilty); Dkt. 47 (Minute Entry on Change of Plea Hearing).

Manslaughter, a crime punishable by more than one year of imprisonment, in 2022 in State of Alaska case number 3AN-18-02530CR.[8]

In May 2024, Costigan moved for a bail hearing.[9] He proposed release to his family, with his wife as his third-party custodian, for approximately three months before sentencing to "care for his family following his wife's upcoming [foot] surgery and secure his family appropriate long-term housing."[10] The Government opposed.[11] It argued that "[t]he circumstances originally justifying the defendant's detention, particularly his dangerousness to the community, have not abated," and that the Government "has reason to believe[] that the proposed third-party custodian is the victim of domestic violence at the hands of the defendant, and that the defendant has previously threatened the proposed third-party custodian's family."[12] United States Probation and Pretrial Services ("USPO") noted concerns about the proposed third-party custodian and recommended a combination of conditions to mitigate the risks of nonappearance and danger to the community.[13] On May 21, 2024, the Magistrate Judge held a bail hearing and denied Costigan's request for release.[14]

On August 2, 2024, Costigan again moved for a bail hearing.[15] This time, he sought "temporary release to the Veterans Affairs ('VA') Domiciliary" for a "bed-to-bed transfer . . . for approximately 30 days, to participate in residential, dual diagnosis services to ensure that he receives appropriate and stabilizing care prior to sentencing in this matter."[16] USPO confirmed that Costigan had been accepted into the program with a proposed admission date of August 21, 2024, and recommended that Costigan would benefit from the program, along with several conditions to mitigate his risk of nonappearance and danger to the community.[17] The Magistrate Judge granted his release on conditions to a residential treatment program representative on August 21, 2024, denying the Government's oral motion to add electronic location monitoring to his release conditions.[18]

On August 19, 2024, the Government moved this Court to revoke Costigan's release under 18 U.S.C. § 3145(a)(1) and detain Costigan pending sentencing.[19] It asserts that Costigan "cannot now bear his burden, by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of any other person or the community if released."[20] The Government notes that Costigan "is a convicted killer with a history of assaulting law enforcement and domestic violence, who has now pleaded guilty to Felon in Possession of a Firearm" and likely faces a long sentence.[21]

---

[8] Dkt. 46 (Notice of Proposed Factual Basis for Plea); Dkt. 47 (Minute Entry).
[9] Dkt. 55 (First Motion for Bail Hearing).
[10] *Id.* at 1–2.
[11] Dkt. 58 (Government's Response in Opposition to Release) at 2.
[12] *Id.* at 2–3.
[13] Dkt. 57 (First USPO Report) at 2–3.
[14] Dkt. 59 (Minute Entry).
[15] Dkt. 63 (Second Motion for Bail Hearing).
[16] *Id.* at 1.
[17] Dkt. 57 (Second USPO Report) at 2–3.
[18] Dkt. 75 (Minute Entry); Dkt. 77 (Release Order).
[19] Dkt. 68 (Government's Motion to Revoke) at 1.
[20] *Id.* at 1–2.
[21] *Id.*

It also argues that Costigan's "contempt for court orders is well documented" because "he has violated protective orders and committed this new federal offense while still on a term of state probation following his last period of incarceration."[22] It also points to Costigan's "history of assaultive conduct," including his conviction for assaulting a police officer and the domestic violence protective order issued against him.[23]

Regarding Costigan's dangerousness, the Government indicates that Costigan's criminal history "reveals a dangerous escalation of violent behavior, beginning with domestic violence and threatening gun violence, to violence against peace officers, and further escalating to the defendant shooting and killing another person."[24] Regarding Costigan's potential nonappearance, the Government points to his "abysmal history with complying with conditions" and observes that "now that he faces sentencing and a significant federal sentence, [he] has an even greater incentive to flee."[25]

The Government also argues that the proposed release conditions fail to establish by clear and convincing evidence that Costigan is not likely to flee or pose a danger to the safety of any other person or the community, and that "[n]either the release plan, nor the conditions of release included in the Magistrate Judge's order . . . satisfy the statutory criteria for release."[26] Rather, the Government argues, the Veterans Affairs Domiciliary is "an environment that would be far easier to flee from," and Costigan "has been convicted of resisting arrest and assaulting police officers to avoid arrest (on separate occasions)."[27] Further, it argues that the proposed conditions do not mitigate the risk of danger to the community considering that Costigan is "a man who has killed another person with a gun, threatened to kill others with a gun, and admitted to unlawfully possessing guns in this case."[28]

Opposing, Costigan urges the Court to deny the Government's motion because clear and convincing evidence establishes that he is not likely to flee or pose a danger to the safety of any person or the community if he is granted "temporary release to residential treatment at the VA Domiciliary under additional conditions as ordered by [the] Magistrate Judge."[29] Regarding his dangerousness, Costigan argues that he "is a decorated war hero who has accepted responsibility for his wrongdoing in this case, who simply wants the opportunity to obtain appropriate stabilizing care before the completion of any additional jail sentence he may receive in this case."[30] He points to his meritorious combat history and his honorable discharge for his serious service-caused injuries and disabilities.[31] Indicating he "is now 100% disabled," Costigan argues that while "before incarceration, he was able to access care for his host of mental health and medical needs, including a service dog," in custody his conditions have been inadequately cared for "to the point

---

[22] *Id.*
[23] *Id.* at 2.
[24] *Id.* at 5–6.
[25] *Id.* at 5–7.
[26] *Id.* at 6.
[27] *Id.*
[28] *Id.*
[29] Dkt. 76 at 1–2.
[30] *Id.* at 3.
[31] *Id.*

where he has even brought lawsuits against the Department of Corrections."[32] He also argues that "[t]he majority of his criminal history occurred in 2015 when he was homeless, separated from his wife, and going through an unstable and tumultuous time."[33]

Regarding his risk of flight, Costigan argues that he "has never failed to appear for a court hearing and that "his home and family are here in Anchorage," such that "he has no out of state connections to flee *to*."[34] Further, he argues that he "has tremendous incentive to do well on release," pointing to positive pretrial risk assessment statistics for similarly situated defendants and arguing that he "has *accepted responsibility* for his wrongdoing" by pleading guilty.[35] He also states that he "knows that if he does well in the program, . . . this Court [will] view that favorably at sentencing" but "if he does poorly, he will likely be looking at a much higher sentence."[36]

Costigan further argues that the proposed release conditions appropriately mitigate any risk of flight or dangerousness he poses.[37] He describes the VA Domiciliary as "a strict environment with constant oversight" from both "treatment staff" and "federal law enforcement officers to maintain safety."[38] He argues that "[h]e was certainly not undergoing residential, dual diagnosis treatment at the VA Domiciliary when he committed any of his prior offenses, with the extensive services and oversight provided through this release plan."[39] Therefore, he urges the Court to grant his release to "help provide essential stabilization for the remainder of any jail sentence he may receive."[40]

### B. Legal Standard

Post-plea, presentence release is governed by 18 U.S.C. § 3143.[41] Under that statute, the Court "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)."[42] If the judicial officer makes such a finding, the defendant shall be released "in accordance with section 3142(b) or (c)."[43] This burden of clear and convincing evidence lies with the defendant.[44]

---

[32] *Id.* at 3–4 (citing *Samson Slade Costigan v. State of Alaska Department of Corrections*, 3:24-cv-00111-SLG, Dkt. 1 (D. Alaska March 21, 2024)).
[33] *Id.* at 5.
[34] *Id.* at 4–5 (emphasis in original).
[35] *Id.* at 4 (emphasis in original).
[36] *Id.* Costigan contests the Government's estimated guideline sentencing range of 84 to 105 months, and instead estimates a guideline range of 46 to 57 months. *Id.* at 4 n.3 (citing Dkt. 68 at 1). No Final Presentence Report has been issued, and the Court takes no position on this matter.
[37] *Id.*
[38] *Id.* at 4.
[39] *Id.* at 5.
[40] *Id.*
[41] Fed. R. Crim. P 46(c).
[42] 18 U.S.C. § 3143(a)(1).
[43] *Id.*
[44] Fed. R. Crim. P. 46(c) ("The provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal. The burden of establishing that the defendant will not flee or pose a danger to any other

Further, under 18 U.S.C. § 3145(a)(1), "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file . . . a motion for revocation of the order."[45] The court having original jurisdiction over the offense shall determine a motion for revocation of a release order or an appeal of a release order promptly.[46] This Court's review of the release order is *de novo*.[47]

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the Court considers: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence and involves a minor victim; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics (including the defendant's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.[48]

### C. Discussion

Upon a *de novo* review, applying the factors under 18 U.S.C. § 3142(g), the Court concludes that Costigan has not met his burden to prove by clear and convincing evidence that he does not pose a risk of flight and danger to the community. Moreover, the Court finds that the proposed release conditions do not surmount Costigan's burden under 18 U.S.C. § 3143(a)(1), and therefore concludes that his continued detention is appropriate.

First, the Court cannot find by clear and convincing evidence that Costigan does not pose a danger to the safety of others or the community, nor that he does not pose a risk of flight. Costigan has pleaded guilty to the crime of Felon in Possession of Firearms and Ammunition and admitted that he possessed the guns knowing he had been convicted of Manslaughter. He has an extensive history of violent offenses, including resisting arrest, assaulting a police officer, violating protective orders, and committing this federal offense while still on probation. Further, given his unlawful possession of guns after committing manslaughter with a rifle in 2018, and threatening to shoot the family members of the subject of a domestic violence protective order against him, the Court is particularly concerned with the risk of danger Costigan could pose to others if he is released.

---

person or to the community rests with the defendant."); *see United States v. Loya*, 23 F.3d 1529, 1530 (9th Cir. 1994).
[45] 18 U.S.C. § 3145(a).
[46] 18 U.S.C. § 3145(a), (c).
[47] *United States v. Koenig*, 912 F. 2d 1190, 1191–93 (9th Cir. 1990) (holding that district courts must engage in *de novo* review of magistrate orders granting or denying defendants' pretrial release).
[48] *See* 18 U.S.C. § 3142(g); *Diaz-Hernandez*, 943 F.3d at 1198; *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Mendez*, No. 12:1-cr-00095-ADA-BAM, 2023 WL 3931720, at *3 (E.D. Cal. June 9, 2023).

Moreover, given Costigan's history of resisting arrest, and the potential he faces for a long sentence, the Court is also concerned that he poses a risk of nonappearance. Although he suggests he has never missed a court appearance and has family in the Anchorage area, the Court does not find that these factors mitigate his risk of flight should he be released to the VA Domiciliary.

The Court agrees that the VA Domiciliary residential, dual diagnosis treatment program services are valuable and potentially beneficial. But this does not surmount Costigan's burden to prove by clear and convincing evidence that he is not a danger to the community or a risk of flight, having pleaded guilty to the crime charged. Finding that Costigan has not met his burden, the Court concludes that his continued detention is appropriate.

### D. Conclusion

For the foregoing reasons, the Court **GRANTS** the Government's Motion at Docket 68 and **REVOKES** the Magistrate Judge's Order of Release. It is **FURTHER ORDERED** that Costigan remain in the custody of the United States Marshal Service.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

Date: August 20, 2024.